***TERRY A. DAKE, LTD.***
**P.O. Box 26945**
**Phoenix, Arizona 85068-6945**
**Telephone: (602) 710-1005**
**tdake@cox.net**

**Terry A. Dake - 009656**

Attorney for Trustee

### IN THE UNITED STATES BANKRUPTCY COURT

### FOR THE DISTRICT OF ARIZONA

In re:                              )     In Chapter 7 Proceedings
                                    )
STEVEN R. DRUMMOND,                 )
MARY A. DRUMMOND,                   )     Case No. 0:22-BK-01765-PS
                                    )
                    Debtors.        )
_____)

### NOTICE OF SUPREME COURT RULING

The trustee files herewith a copy of the ruling of the Arizona Supreme Court regarding the "mobile home" exemption claimed by the debtors.

The trustee requests that, consistent with this ruling, the Court enter a final order denying the homestead exemption claimed by the debtors.

DATED February 23, 2024.

***TERRY A. DAKE, LTD.***

By /s/ TD009656
Terry A. Dake
P.O. Box 26945
Phoenix, Arizona 85068-6945

```
 1    COPY e-mailed February 23, 2024 to:

 2    Keith S Knochel
      KNOCHEL LAW OFFICES
 3    1967 HIGHWAY 95
      BULLHEAD CITY, AZ 86442
 4    928-444-1000
      Fax : 928-444-1015
 5    Email: bank@lawyersinarizona.com

 6     /s/ TD009656

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28                                    2
```

IN THE

# SUPREME COURT OF THE STATE OF ARIZONA

---

**IN RE:**

**STEVEN R. DRUMMOND, MARY A. DRUMMOND,**
*Debtors.*

---

No. CV-23-0009-CQ
Filed February 23, 2024

---

Certified Question from the
United States Bankruptcy Court for the District of Arizona
The Honorable Paul Sala, Bankruptcy Judge
No. 0:22-BK-01765-PS
**QUESTION ANSWERED**

---

COUNSEL:

Keith S. Knochel, Nicholas R. Darus (argued), Knochel Knochel & Darus, Bullhead City, Attorneys for Steven R. Drummond and Mary A. Drummond

Terry A. Dake (argued), Terry A. Dake, Ltd., Phoenix, Attorney for Lawrence J. Warfield

Brett W. Johnson, Benjamin W. Reeves, Tracy A. Olson, Ryan P. Hogan, Charlene A. Warner, Snell & Wilmer L.L.P., Phoenix, attorneys for Amici Curiae Arizona Creditors Bar Association, et al.

---

JUSTICE BEENE authored the Opinion of the Court, in which CHIEF JUSTICE BRUTINEL, and JUSTICES BOLICK, LOPEZ, MONTGOMERY, and KING joined. VICE CHIEF JUSTICE TIMMER dissented.

---

JUSTICE BEENE, Opinion of the Court:

¶1        The United States Bankruptcy Court for the District of Arizona certified the following question to this Court: "Whether a motor home in which a person over 18 years of age resides qualifies as a mobile home for the purpose of claiming an Arizona homestead exemption pursuant to A.R.S. § 33-1101(A)(3)." For the reasons explained below, we hold that a motor home does not qualify for an exemption.

## BACKGROUND

¶2        Steven and Mary Drummond (the "Drummonds") filed for Chapter 7 bankruptcy in March 2022. The question here centers around the Drummonds' self-propelled motor home, a 2017 Tiffin Allegro recreational vehicle, which they use as a full-time residence. During the bankruptcy proceedings, the Drummonds claimed that their motor home is subject to the homestead exemption as a "mobile home" under § 33-1101(A)(3).[1] The trustee objected to this exemption, arguing that the Drummonds' motor home is not a mobile home under Arizona law. Following the parties' arguments regarding the applicability of § 33-1101(A)(3), the bankruptcy judge certified the question to this Court.

¶3        Because no Arizona precedent exists determining whether a motor home qualifies as a mobile home under Arizona's homestead exemption statute, we agreed to resolve the certified question pursuant to article 6, section 5(6) of the Arizona Constitution and A.R.S. § 12-1861.

## DISCUSSION

¶4        Section 33-1101(A) sets out Arizona's homestead exemption. The statute applies to four residence types and reads in relevant part:

---

[1] In discussing § 33-1101, this Opinion is only referring to the homestead exemption effective January 1, 2022. Thus, if applicable here, the exemption would exclude up to $250,000 of equity in the motor home from the bankruptcy estate. *See* § 33-1101 (January 1, 2022).

2

A.     Any person eighteen years of age or over, married or single, who resides within this state may hold as a homestead exempt from execution and forced sale, not exceeding $250,000 in value, any one of the following:

1.     The person's interest in real property in one compact body on which exists a dwelling house in which the person resides.

2.     The person's interest in one condominium or cooperative in which the person resides.

3.     A mobile home in which the person resides.

4.     A mobile home in which the person resides plus the land on which that mobile home is located.

§ 33-1101(A).     Determining whether a motor home qualifies for a homestead exemption compels us to interpret § 33-1101(A).

¶5     We "determine the plain meaning of the words the legislature chose to use, viewed in their broader statutory context." *See Columbus Life Ins. Co. v. Wilmington Tr., N.A.*, 255 Ariz. 382, 385 ¶ 11 (2023). "Our task in statutory construction is to effectuate the text if it is clear and unambiguous." *BSI Holdings, LLC v. Ariz. Dep't of Transp.*, 244 Ariz. 17, 19 ¶ 9 (2018). Absent ambiguity, we interpret statutes according to their plain language. *Premier Physicians Grp., PLLC v. Navarro*, 240 Ariz. 193, 195 ¶ 9 (2016). When a statute's plain language is unambiguous in context, it is dispositive. *See Shea v. Maricopa County*, 255 Ariz. 116, 120–21 ¶ 19 (2023); *see also* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 167 (2012) (explaining that courts must interpret a statute's plain language in context, because "[c]ontext is a primary determinant of meaning"). Additionally, "[i]n construing a specific provision, we look to the statute as a whole and we may also consider statutes that are *in pari materia*—of the same subject or general purpose—for guidance and to give effect to all of the provisions involved." *Stambaugh v. Killian*, 242 Ariz. 508, 509 ¶ 7 (2017). However, if more than one reasonable interpretation exists,

we will examine secondary interpretation methods, including the statute's subject matter, historical background, effects and consequences, as well as its spirit and purpose to aid with interpretation. *See Romero-Millan v. Barr*, 253 Ariz. 24, 27–28 ¶ 13 (2022).

## I.

¶6  The Drummonds argue that their motor home qualifies for the homestead exemption under § 33-1101. Title 33 does not expressly define "motor home," but Title 28, which governs transportation, defines "motor home" as "a motor vehicle that is primarily designed as temporary living quarters and that [i]s built onto as an integral part of, or is permanently attached to, a motor vehicle chassis." A.R.S. § 28-4301(19)(a). This definition suggests that a "motor home" is a vehicle and is therefore readily and inherently movable. Consistent with this definition, the Drummonds used their 2017 Tiffin Allegro to travel around the United States from February through October 2019.

¶7  Section 33-1101 allows certain "mobile homes" to qualify for the homestead exemption, but the statute does not define the term. Absent a statutory definition, courts generally give words their ordinary meaning and may look to dictionary definitions. *Chaparro v. Shinn*, 248 Ariz. 138, 141 ¶ 14 (2020). When dictionary definitions are unavailing, however, context is critical. *See DBT Yuma, L.L.C. v. Yuma Cnty. Airport Auth.*, 238 Ariz. 394, 396 ¶ 10 (2015).

¶8  Here, dictionary definitions of "mobile home" are too varied to categorically establish any plain meaning. *See, e.g.*, *Mobile Home*, Merriam-Webster, https://www.merriam-webster.com/dictionary/mobile%20home (last visited Feb. 20, 2024) (defined since 1934 as "a dwelling structure built on a steel chassis and fitted with wheels that is intended to be hauled to a usually permanent site"); *Mobile Home*, Cambridge Dictionary, https://dictionary.cambridge.org/dictionary/english/mobile-home (last visited Feb. 20, 2024) ("[A] type of building that people live in, usually staying in one place, but able to be moved using a vehicle or sometimes its own engine."); *Mobile Home*, Dictionary.com, https://www.dictionary.com/browse/mobile-home (last visited Feb. 20,

4

2024) ("[A] large house trailer, designed for year-round living in one place."). One definition allows for self-propulsion, while another only allows the mobile home to be "hauled." But despite these differences, the dictionary definitions all suggest a mobile home must generally have a permanent location—either by design or intent. However, none of these definitions describe what makes such a location permanent.

¶9        But inconclusive dictionary definitions do not render the term ambiguous. Rather, as previously noted, "[w]e do not view statutory words in isolation, but rather draw their meaning from the context in which they are used." *See DBT Yuma*, 238 Ariz. at 396 ¶ 10. And considering the term "mobile home" in the context of § 33-1101(A)'s other subsections dispels any purported ambiguity regarding the term's meaning.

¶10        Sections 33-1101(A)(1), (2), and (4) each describe a permanent residence in which a person seeking a homestead exemption resides. Each subsection describes a home that is permanently attached to land—often anchored to a foundation or at least with its wheels and axles removed, hard-wired to electrical services, and hard-plumbed to both water and sewer. Examined in this context, the Drummonds' argument that the subsection (A)(3) definition of "mobile home" includes a readily movable "motor home" fails.

¶11        First, § 33-1101(A)(1)'s exemption includes a "person's interest in real property in one compact body on which exists a dwelling house in which the person resides." This subsection describes an occupied structure permanently located on a parcel of land—and it is axiomatic that both land and structures attached to it are real property. *See Real Property*, Black's Law Dictionary (11th ed. 2019) ("Land and anything growing on, attached to, or erected on it, excluding anything that may be severed without injury to the land."). And real property inherently has a permanent location.

¶12        Second, § 33-1101(A)(2)'s exemption includes a "person's interest in one condominium or cooperative in which the person resides." A condominium is also real property permanently located where it is built. *See* A.R.S. § 33-1202(10) ("'Condominium' means *real estate* . . . ." (emphasis

5

added)). The same is true for a person's cooperative interest. *See Kadera v. Superior Court*, 187 Ariz. 557, 563 (App. 1996) ("[T]he cooperator has a real property ownership interest."). And both a condominium and a cooperative are immobile structures inherently tied to the location on which they were constructed. *See Condominium*, Merriam-Webster, https://www.merriam-webster.com/dictionary/condominium (last visited Feb. 20, 2024) ("[I]ndividual ownership of a unit in a multiunit structure (such as an apartment building) or on land owned in common (such as a town house complex)."); *Cooperative*, Dictionary.com, http://www.dictionary.com/browse/cooperative (last visited Feb. 20, 2024) ("[A] building owned and managed by a corporation . . . ."). Though the dictionary definition of "cooperative" is not limited to dwellings, § 33-1101(A)(2)'s reference to "in which the person resides" plainly identifies a cooperative in the context of a cooperative dwelling.

¶13 Lastly, § 33-1101(A)(4)'s exemption includes a mobile home, but also "the land on which the mobile home is located." This requires that a mobile home has been placed on a particular piece of real property which is also owned by the homestead claimant. The fact that (A)(4) allows an individual to also claim the land indicates a strong, permanent connection between the mobile home and the land. If that were not the case, a readily movable vehicle such as a motor home could be parked on the debtor's land shortly before a bankruptcy filing, and the land upon which it was parked would be included in the homestead exemption—despite not having any physical or permanent attachment to the land. That would be beyond the legislature's purpose of exempting a homestead. *Cf. In re McLauchlan*, 252 Ariz. 324, 325 ¶ 8 (2022) (explaining that the purpose of the exemption is to prevent homelessness, but not "to confer any financial benefits upon debtors beyond the exemption"). Therefore, subsection (A)(4), like the other exemptions in § 33-1101(A), is concerned only with real property and the structures physically attached thereto. A mobile home under (A)(4), unlike a motor home, is physically connected to the land in such a way that it is not readily movable.

¶14 Residences that come under (A)(1), (2) and (4) are permanently situated and physically connected to land. Houses, condominiums, and cooperatives are physically connected to the property

6

on which they are built. These physical connections include permanent integration with utilities, like electricity, water, and sewer. It is difficult and time-consuming to sever these connections and re-establish them elsewhere. Though it is theoretically possible to move, for example, a stick-built home to another piece of land, moving such a residence requires the effort of severing the permanent, physical connections to the residence's foundation and utilities, as well as attaching wheels or using another mode of transportation. Similarly, mobile homes under (A)(4) are physically connected to land owned by the debtor and would also be difficult to sever and move.

¶15 This interpretation of subsection (A)(4) might suggest that § 33-1101(A)(3) could include a mobile home *without* any significant connection to land, but that would be a misreading of subsection (A)(3) considering the nature of mobile home ownership. Owners of mobile homes may permanently situate their homes upon leased—rather than owned—land. *See generally* A.R.S. §§ 33-1401 to -1419 ("Arizona Mobile Home Parks Residential Landlord and Tenant Act"). Mobile home park residents connect their homes to utilities, rendering them difficult to move, and thus establish permanent connections with land. *See* § 33-1409(16) ("'Mobile home space' means a parcel of land for rent that has been designed to accommodate a mobile home and provide the *required* sewer and utility connections." (emphasis added)). Owners of mobile homes who *lease* the land where their mobile home is situated would not be eligible for the § 33-1101(A)(4) exemption because they do not *own* the land. Section 33-1101(A)(3) merely provides the same exemption to individuals who do not own the property on which the mobile home is located.

¶16 Residential structures that are not readily movable and are tied to a permanent location is the context establishing subsection (A)(3)'s meaning because these characteristics are common among § 33-1101(A)'s subsections. Given this contextual framework, a "mobile home" under subsection (A)(3) describes a dwelling that is not intended to be moved once placed and physically attached to property.

¶17        Moreover, considering the term "mobile home" in a broader statutory context also suggests that the term describes a permanent dwelling attached to land. Although not an exemption statute like § 33-1101, a statute in a related chapter, § 33-1409, distinguishes between mobile homes and less-permanent, readily movable vehicles. Section 33-1409 expressly excludes any "recreational vehicle *such as a motor home*" from the definition of a mobile home. § 33-1409(14)(b)(i) (emphasis added). Though this definition is only directly applicable to the chapter in which it is found, § 33-1101 and § 33-1409 are *in pari materia* because they classify a specific type of residential property and determine that property's legal treatment. *See Stambaugh*, 242 Ariz. at 509 ¶ 7. Section 33-1409 thus provides additional context for the legislature's use of the term "mobile home" in § 33-1101(A)(3)—that mobile homes and motor homes are separate and distinct.

¶18        Accordingly, a motor home cannot be a "mobile home" under the homestead statute because it is intended to be readily movable and is not tied to the land upon which it sits in any significant way. *See* § 28-4301(19)(a). Section 33-1101(A)(3)'s contextual plain meaning leads to the conclusion that a "motor home" is not a "mobile home" for purposes of this exemption.

¶19        Our dissenting colleague, however, would have us analyze § 33-1101(A) divorced from context, and thus have us declare the term "mobile home" ambiguous. But it is not. We interpret statutes "according to the plain meaning of the words in their broader statutory context, unless the legislature directs us to do otherwise." *S. Ariz. Home Builders Ass'n v. Town of Marana*, 254 Ariz. 281, 286 ¶ 31 (2023). As explained, each subsection of § 33-1101(A) provides the context for (A)(3).

¶20        Though not disagreeing that (A)(1) and (A)(2) describe difficult-to-move dwellings that are physically attached to property, the dissent focuses on the word "located" in (A)(4) to argue that an easy-to-move dwelling could qualify for (A)(4)'s exemption. *Infra* ¶ 40. But if "located" in this context does *not* mean physically connected, then a bankruptcy debtor would be able to drive their motor home to a parcel of land to protect additional assets. And as the dissent acknowledges, the

8

homestead exemption protects the home, *see infra* ¶ 46, not the most valuable plot of land you can drive a vehicle to for purposes of claiming an exemption.

¶21 Ultimately, the dissent elevates the policy interests purportedly served by the statute over what we view as the best reading of subsection (A)(3) in its proper context. *See infra* ¶ 46. That we cannot do. We defer to the legislature to exercise its prerogative to modify the statute to better align with its policy objectives if it disagrees with our interpretation of the statute. For all these reasons, subsection (A)(4) requires a permanent connection with the land, and, together with (A)(1) and (A)(2), informs us that (A)(3) also requires a permanent connection.

## II.

¶22 Because § 33-1101(A)(3)'s plain meaning is clear, the statute is unambiguous; however, even if § 33-1101(A)(3) were ambiguous, analyzing the statute using secondary interpretive methods supports the interpretation set forth above. *See Fann v. State*, 251 Ariz. 425, 434–35 ¶¶ 27, 29 (2021).

¶23 The associated-words canon, *noscitur a sociis*, is the interpretive method used to "avoid ascribing to one word a meaning so broad that it is inconsistent with its accompanying words," thus avoiding giving legislative acts "unintended breadth." *Yates v. United States*, 574 U.S. 528, 543 (2015) (quoting *Gustafson v. Alloyd Co.*, 513 U.S. 561, 575 (1995)). This interpretive canon is applicable when terms are "conjoined in such a way as to indicate that they have some quality in common." Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 196 (2012). "The common quality suggested by a listing should be its most general quality—the least common denominator, so to speak—relevant to the context." *Id.*; *see also Third Nat'l Bank in Nashville v. Impac Ltd., Inc.*, 432 U.S. 312, 322 (1977) ("It is a familiar principle of statutory construction that words grouped in a list should be given related meaning.").

¶24      As noted above, the common characteristics among § 33-1101(A) subsections (1), (2), and (4) is that each describes a residential structure with permanent connections to land. *See* Part I ¶¶ 10–15. This permanent connection characteristic is the "least common denominator" among the statute's exemptions and provides the context in which to conclude that a "mobile home" also constitutes a structure permanently anchored to land where a person resides. A mobile home used as a primary residence inherently has a permanent connection with land — it is hard-wired to electricity and similarly connected to other utilities. But in contrast, a "motor home" is readily movable and inherently *unanchored* to land. We must not give (A)(3) "unintended breadth" by interpreting it to include a readily movable motor home. *See Yates*, 574 U.S. at 543. Accordingly, a motor home is not eligible for § 33-1101(A)(3)'s exemption.

¶25      Considering the statute's title and subject matter also confirms this conclusion. *See State v. Eagle*, 196 Ariz. 188, 190 ¶ 7 (2000) (noting that where an ambiguity exists, the title of a statute may be used to aid in its interpretation). Title 33, chapter 8 is named "Homestead and Personal Property Exemption" and chapter 8, article 1 — where § 33-1101(A) is located — is titled "Homesteads and Homestead Exemption." As explained above, the exemptions found in article 1 relate to real property and structures permanently anchored to real property. *See* Part I ¶¶ 7–14. That is, article 1 is concerned with homesteads that are (1) real property, and (2) dwelling structures that cannot be readily moved because they are attached to real property. *Cf. Real Property*, Black's Law Dictionary (11th ed. 2019) ("excluding anything that may be severed without injury to the land" from the definition of "real property"). Conversely, the following article in chapter 8 is titled "Personal Property Exemption." Here, the exemptions focus on personal property. Personal property is defined as "[a]ny *movable* or intangible thing that is subject to ownership and *not classified as real property*." *Personal Property*, Black's Law Dictionary (11th ed. 2019) (emphasis added). This second article is concerned with property that is easily movable because it is not anchored to real property.

¶26      A mobile home is customarily tied to real property because of its characteristic of permanency, *see* Part I ¶ 8, and such integration renders it *practically* unmovable, *see* Part I ¶ 14. In contrast, a motor home is

10

self-propelled, and thus readily movable, and has no permanent connection with real property. Accordingly, § 33-1101's title and subject matter further confirm that a motor home is not eligible for Arizona's homestead exemption.

¶27      Whether interpreting § 33-1101(A)(3) according to its contextual plain meaning or applying secondary interpretative methods to ascertain its meaning, we conclude that subsection (A)(3)'s exemption pertains to a permanent, fixed structure where a person resides. Thus, a "motor home" cannot be a "mobile home" under the homestead statute because it is readily movable and not anchored to land.

### III.

¶28      We conclude by addressing *In re Irwin*, 293 B.R. 28 (Bankr. D. Ariz. 2003), where the United States Bankruptcy Court for The District of Arizona concluded that a "motor home . . . can qualify for the homestead exemption under A.R.S. § 33-1101(A)(3)." *Id.* at 33. The Drummonds relied on *Irwin* when asserting their homestead exemption. The dissent similarly relies on the rationale underpinning *Irwin*. *Infra* ¶ 46. But we disagree with the *Irwin* court's interpretation of § 33-1101(A) for several reasons.

¶29      First, the bankruptcy court did not engage in an interpretive analysis of § 33-1101(A) when it concluded that "a motor home can satisfy the definition and purpose of Arizona's homestead law." *Irwin*, 293 B.R. at 29. Although the court attempted to ascertain the statute's plain meaning, it did not consider its meaning by viewing the statute in its broader context. *See Columbus Life Ins. Co.*, 255 Ariz. at 385 ¶ 11. Instead, it summarily concluded that the plain meaning of § 33-1101(A)(3) supported both parties' definitions of mobile home. *Irwin*, 293 B.R. at 30.

¶30      The *Irwin* court's use of secondary methods of interpretation to define § 33-1101(A)(3) is equally unavailing. Rather than utilizing the previously mentioned secondary principles, the court determined that it was "necessary to rely on the legislative purpose underlying the statute" expressed in *Matcha v. Winn*, 131 Ariz. 115 (App. 1981), to define

§ 33-1101(A)(3). *Irwin*, 293 B.R. at 30. However, the court's reliance on *Matcha* is misplaced.[2]

¶31 In *Matcha*, the court of appeals stated that "the fundamental purpose of the homestead law is to protect the family against the forced sale of home property from certain creditors, and, to further this purpose, the homestead laws should be interpreted liberally to advance the objectives of the statutes." 131 Ariz. at 117. The court's directive to liberally interpret the homestead law, however, was announced for a circumstance distinctly different from the one posed in this certified question. In that case, the court was asked to determine whether the party seeking an exemption, the Winns, complied with A.R.S. § 33-1102, which required, among other things, that an exemption claim be filed with the county recorder. *Id.* The party objecting to the exemption, the Matchas, asserted that the Winns failed to comply with § 33-1102's requirements. *Id.* It was in this limited context—whether there was substantial compliance with § 33-1102—that the court of appeals announced that the homestead laws should be liberally construed. *Id.* at 117–18.

¶32 This Court has previously found that the equitable doctrine of substantial compliance is appropriate when deciding whether statutory obligations have been met. *See, e.g.*, *In re Pima Cnty. Mental Health No. 20200860221*, 255 Ariz. 519, 524 ¶ 11 (2023) (explaining that substantial compliance "tolerates errors if the purpose of the relevant statutory requirements was nevertheless fulfilled"); *Feldmeier v. Watson*, 211 Ariz. 444, 447 ¶ 14 (2005) (allowing substantial compliance with initiative petition statutes if the petition "fulfills the purpose of the relevant statutory or constitutional requirements"); *Pima County v. Cyprus-Pima Mining Co.*, 119 Ariz. 111, 114 (1978) (allowing substantial compliance with statute requiring payment of disputed taxes because "spirit of the law" was satisfied). This doctrine, however, is not applicable when interpreting the text of a statute to determine its meaning. Our statutory interpretation

---

[2] In addition to misreading *Matcha*, the bankruptcy court also incorrectly attributed the *Matcha* decision to this Court. *Matcha* is an Arizona Court of Appeals Opinion.

12

jurisprudence is circumscribed, and it requires us to use established principles of interpretation to ascertain a statute's meaning. *See DBT Yuma*, 238 Ariz. at 396 ¶ 10; *Fann*, 251 Ariz. at 434–35 ¶¶ 27, 29. And while applying an equitable doctrine like substantial compliance may be appropriate in determining whether a statute's requirements have been satisfied, we have never used the doctrine as a method of statutory interpretation. We see no compelling reason to do so now. *Cf. Molera v. Reagan*, 245 Ariz. 291, 297 ¶ 26 (2018) ("[W]e cannot rewrite statutes to smooth their rough edges.").

¶33        Finally, the *Irwin* court's analysis of the relationship between subsections (A)(3) and (A)(4) also misses the mark. In support of its conclusion that a motor home is exempt property, the court stated "the homestead statute indicates there is no necessity that the mobile home be affixed or even customarily used in connection with any particular real estate, because the distinction between paragraphs (A)(3) and (A)(4) clearly implies there need be no particular relationship to any real property." *Irwin*, 293 B.R. at 31–32. A contextual analysis of § 33-1101(A), however, reveals that the exemptions are given to structures in which an individual can reside and that are permanently located on real property. *See* Part I ¶ 15. Given that the relationship to real property is the common characteristic among the exemptions in § 33-1101(A), the distinction between subsections (A)(3) and (A)(4) is significant because without this difference an individual's mobile home located on leased land would not be eligible for an exemption. Viewing § 33-1101(A) in context demonstrates that the distinction between subsections (A)(3) and (A)(4) is meaningful and reflects their necessary relationship to real property.

¶34        Accordingly, *Irwin*'s reliance on *Matcha* for the proposition that the homestead law should be "interpreted liberally" is misplaced and its conclusion that a motor home is exempt under § 33-1101(A)(3) is incorrect.

13

**CONCLUSION**

¶35        We answer the certified question by holding that a motor home in which a person over 18 years of age resides does not qualify for the Arizona homestead exemption under A.R.S. § 33-1101(A)(3).

14

TIMMER, VCJ., dissenting,

¶36      Since statehood, Arizona has provided homeowners with a homestead exemption to prevent families from being rendered homeless by the debt collection process. *See In re McLauchlan*, 252 Ariz. 324, 325 ¶ 8 (2022); *Ferguson v. Roberts*, 64 Ariz. 357, 361 (1946); *see also First Nat'l Bank v. Reeves*, 27 Ariz. 508, 514–15 (1925) (discussing the pre-statehood and post-statehood homestead exemptions). Today, people make their homes in a variety of structures. Many people live in traditional single-family homes, condominiums, cooperatives, and permanently affixed manufactured homes. But others live in non-traditional portable housing, like houseboats, motor homes, and even tiny houses on wheels. The issue here is whether the term "mobile home," as used in our homestead statute, A.R.S. § 33-1101(A), includes motor homes used as permanent housing, thereby giving their owners the same homestead exemption afforded to owners of traditional homes.

¶37      Federal courts have maintained for decades that the term "mobile home" can include a motor home used as a permanent residence, and I agree. *See Warfield v. Froemming*, 663 F.Supp.3d 1079, 1083–84 (D. Ariz. 2023); *In re Irwin*, 293 B.R. 28, 31 (Bankr. D. Ariz. 2003). I interpret "mobile home" as used in § 33-1101(A) to mean lodging that can be moved from place to place and is actually used as the owner's permanent residence. Because the majority reaches a contrary conclusion, I respectfully dissent.

¶38      The homestead statutes do not define "mobile home." We therefore interpret § 33-1101(A) to effectuate the legislature's intent. *See Glazer v. State*, 237 Ariz. 160, 163 ¶ 12 (2015). If the provision has only one reasonable meaning, we apply it without further discussion. *Id.* If the provision has more than one reasonable meaning, we apply secondary principles to determine the legislature's intended meaning, like examining the statute's "historical background, its effects and consequences, and its spirit and purpose." *Id.* (quoting *Wyatt v. Wehmueller*, 167 Ariz. 281, 284 (1991)).

¶39      The majority finds that "mobile home" in § 33-1101(A)(3) plainly refers to "a dwelling that is not intended to be moved once placed

15

and physically attached to property." *Supra* ¶ 16. As such, my colleagues conclude the term cannot include a self-propelled motor home because it is "intended to be readily movable and is not tied to the land upon which it sits in any significant way." *Supra* ¶ 18. I disagree that § 33-1101(A)(3) has one, plain meaning.

¶40      First, no language in § 33-1101(A)(3) or (A)(4) suggests that a "mobile home" must be designed to stay in one location or be physically attached to land. Subsection (A)(3) succinctly refers to a "mobile home." Nothing indicates whether the legislature used "mobile home" as a term of art referring to a manufactured home, which is generally designed to stay in one place once installed, or merely to describe a "home" that is "mobile." Either interpretation is reasonable. *See Warfield*, 663 F.Supp.3d at 1081. Subsection (A)(4) includes a mobile home and the land on which it is "located" within the homestead exemption. But "located" does not necessarily mean physically attached. A mobile home resting on land and hooked to utilities is "located" on that land. *Locate*, Merriam-Webster, https://www.merriam-webster.com/dictionary/located (last visited Feb. 20, 2024) (defining "located" in relevant part as "to set or establish in a particular spot").

¶41      Second, § 33-1101's other subsections do not establish that "mobile home," as used in subsections (A)(3) and (A)(4), plainly refers to a dwelling intended to remain in one place and that is physically attached to property. The majority reasons that because the traditional dwellings in (A)(1) and (A)(2) are permanently affixed to real property, a "mobile home" must be similarly affixed. *See supra* ¶¶ 11–12. Why? A mobile home is inherently different from traditional dwellings. Unlike traditional homes, mobile homes have vehicle identification numbers, are titled by the Arizona Department of Transportation (until affixture), and are subject to security interests. *See* A.R.S. § 28-2063(A); § 42-15203(B). The mobile home is taxed as personal property unless the owner also owns the land where the home is installed and records an affidavit of affixture. *See* §§ 42-15202; -15203(K). In that situation, the mobile home is taxed as real property. *See* § 42-15202. There are too many differences between traditional homes and mobile homes to infer the latter necessarily must be designed to remain in one location and be permanently attached to land.

16

¶42 The majority also contends that subsection (A)(4) "describes a home that is permanently attached to land—often anchored to a foundation or at least with its wheels and axles removed, hard-wired to electrical services, and hard-plumbed to both water and sewer." *See supra* ¶ 10. It then concludes that, along with subsections (A)(1) and (A)(2), subsection (A)(4) necessarily means that the "mobile home" in subsection (A)(3) must be immovable. Respectfully, the majority's characterization of subsection (A)(4) is not supported by its language. Subsection (A)(4) permits a homestead exemption for "[a] mobile home in which the person resides plus the land on which that mobile home is located." Nothing is said about permanent attachment, a foundation, removal of wheels and axles, hard-wiring or hard-plumbing. And as explained, a mobile home can be "located" on land without physical attachment. *See supra* ¶ 40.

¶43 Third, even if the legislature used "mobile home" as a term of art in 1971, the year the legislature included "mobile homes" within the homestead exemption, *see* 1971 Ariz. Sess. Laws ch. 94, § 2 (1st Reg. Sess.), the term was used broadly and could include motor homes. *See* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 78 (2012) ("Words must be given the meaning they had when the text was adopted."). For example, some dictionaries defined "mobile home" as a "trailer," *Mobile Home*, Webster's Seventh New Collegiate Dictionary 543 (1967), and then defined "trailer," in part, as "a highway vehicle designed to serve wherever parked as a dwelling," *Trailer*, Webster's Seventh New Collegiate Dictionary 938 (1967). *See also Matthews v. Indus. Comm'n*, 254 Ariz. 157, 163 ¶ 33 (2022) (turning to dictionary definitions from the time a provision was adopted to determine original public meaning of terms). Nothing confined that definition to non-self-propelled or difficult-to-move homes. Similarly, nothing in § 33-1101(A) disqualifies self-propelled homes from protection under the homestead statutes.

¶44 Fourth, the legislature explicitly defined "mobile home" in another chapter of Title 33 as excluding "motor homes." *See* A.R.S. § 33-1409(14)(b)(i) (defining "mobile home" for purposes of the Arizona Mobile Home Parks Residential Landlord and Tenant Act as excluding "[a] recreational vehicle such as a motor home, camping trailer, van, fifth wheel trailer or other type of recreational vehicle"). This exclusion would not

have been necessary if, as the majority posits, a "mobile home" plainly excludes motor homes. By including the exclusion within § 33-1409(14), the legislature acknowledged that people could otherwise reasonably interpret a "mobile home" as including a motor home.

¶45 For these reasons, I agree with federal court decisions that "mobile home," as used in § 33-1101(A), can reasonably be interpreted as either a trailer home that is not self-propelled or a motor home that is self-propelled when either is used as a permanent residence. *See Warfield*, 663 F.Supp.3d at 1081; *Irwin*, 293 B.R. at 30. The term is therefore ambiguous, and we can only determine the legislature's intended meaning by considering secondary interpretive principles. *See Glazer*, 237 Ariz. at 163 ¶ 12.

¶46 The purpose of the homestead exemption supports an interpretation of "mobile home" as any lodging that can be moved and is actually used as the owner's permanent residence. This Court has consistently found that the purpose of the homestead exemption is to ensure that "individuals whose property is subject to foreclosure are not rendered homeless." *See McLauchlan*, 252 Ariz. at 325 ¶ 8; *see also Ferguson*, 64 Ariz. at 361 ("The chief object of these laws is to shelter the family . . . ."). Consequently, we "liberally constru[e] our exemption laws so as to preserve the homestead." *Reeves*, 27 Ariz. at 513; *see also Wilson v. Lowry*, 5 Ariz. 335, 341–42 (1898) ("It is the well-settled policy of the courts to liberally construe those humane and beneficial provisions of the law exempting certain property from execution for the payment of debts."), *overruled in part on other grounds by Hoff v. City of Mesa*, 86 Ariz. 259 (1959); *Matcha v. Winn*, 131 Ariz. 115, 117 (App. 1981) ("[T]he homestead laws should be interpreted liberally to advance the objectives of the statutes."); A.R.S. § 1-211(B) (providing courts should "liberally construe[] [statutes] to effect their objects and to promote justice"). Interpreting "mobile home" as including self-propelled vehicles that are actually used as the owner's permanent residence fulfills this purpose. In other words, whether or not a home has a motor, the homestead exemption fulfills its purpose by protecting the family's interest in that home. *See Warfield*, 663 F.Supp.3d at 1082 ("[T]he fact that a debtor's home has a motor makes it no less the debtor's home.").

Case 0:22-bk-01765-PS    Doc 69    Filed 02/23/24    Entered 02/23/24 10:32:33    Desc
Main Document    Page 20 of 22

¶47    Relatedly, interpreting "mobile home" in § 33-1101(A) as including a motor home if the owner actually resides there would not permit motor home owners to abuse the homestead exemption. A person or a married couple can only hold one homestead exemption. § 33-1101(B). Thus, if the motor home is that home, the exemption applies to it and no other home. Under no circumstances could a motor home owner receive an extra homestead exemption. Whether the owner can include the land on which the motor home is located, *see* § 33-1101(A)(4), would depend on the facts of the individual case. That issue is not before us. Regardless, an owner could not include land within the exemption simply by parking on it, just as an owner could not tow a non-self-propelled trailer to land simply to include that land within the exemption. *See* § 33-1101(A)(4) (requiring an owner to reside in the mobile home located on the land). Thus, I do not share the majority's concerns about misusing the homestead exemption if a motor home could be considered a "mobile home." *See supra* ¶ 13.

¶48    The operative provisions of §§ 33-1101(A)(3) and (A)(4) are consistent with my interpretation of "mobile home." Those provisions authorize a homestead exemption for mobile homes alone, *see* § 33-1101(A)(3), or for mobile homes "plus the land on which that mobile home is located," *see* § 33-1101(A)(4). A mobile home does not have to be permanently affixed to any real estate to qualify for the homestead exemption. *See Irwin*, 293 B.R. at 31–32 ("Moreover, the homestead statute indicates there is no necessity that the mobile home be affixed or even customarily used in connection with any particular real estate."). The only limitation is that the mobile home be one "in which the person resides." §§ 33-1101(A)(3), (A)(4); *see also Morrisey v. Ferguson*, 156 Ariz. 536, 536–37 (App. 1988) (finding that an individual who filed a homestead declaration on his mobile home while in prison did not "reside" in the mobile home for purposes of prior version of A.R.S. § 33-1101(A)(4) and, therefore, did not comply with the requirements of the statute). Thus, the homestead exemption can extend to both non-self-propelled manufactured homes even if the owner does not file an affidavit of affixture, *see* A.R.S. §§ 33-1501; 42-15203, or to motor homes, if the owner actually resides there.

¶49    Finally, the legislature's decision not to exclude motor homes from the term "mobile home" as it did in the Arizona Mobile Home Parks

Residential Landlord and Tenant Act "supports the conclusion that the term 'mobile home' encompasses a motor home for the purposes of the exemption." *Warfield*, 663 F.Supp.3d at 1082.

¶50      The fundamental difference between a permanently attached manufactured home and a motor home is the latter's ability to propel itself. Section 33-1101(A)'s focal point for permitting a homestead exemption is not the design or characteristics of a home—including whether it is motorized—but whether it actually serves as the owner's residence. Thus, a motor home can be a mobile home for homestead purposes if the owner actually lives there, and I would answer the bankruptcy court's question accordingly.

20